OPINION OF THE COURT
Luis M. Ñeco, J.
The above defendants were each, individually, charged with patronizing a prostitute (Penal Law, § 230.03). Each defendant has sought relief in the form of dismissal in the interests of justice pursuant to CPL 170.40. The court has sought to combine the motions for the sake of simplicity.
The factual situations are as follows:
Defendant Izsak allegedly patronized a decoy police officer posing as a prostitute. The defendant states he is an alien, married, with a six-year-old child. He claims he was somewhat intoxicated. He is gainfully employed and has allegedly suffered financially due to his court appearances.
Lastly, the defendant claims that by placing him in the most disfavorable light, no great social harm has occurred, while more serious crimes (i.e., assaults, larcenies) are routinely dismissed or adjourned in contemplation of dismissal.
The People contend the defendant has stated no compelling factor, consideration, or circumstance which would justify a *545 dismissal pursuant to CPL 170.40. The People contend that patronizing a prostitute is as serious a crime as prostitution.
Further, they state the defendant has suffered no greater hardship than that of any defendant in a criminal prosecution.
The People also blame the defendant for delays when the case was ready to proceed.
Defendant Sheydwasser is accused of approaching a female police officer (dressed in plain clothes) at 5:45 a.m. on March 30, 1979, and allegedly offering her $20 for sexual intercourse.
The defendant contends he has never been arrested before; the nature of the charge places his marriage in jeopardy; and the court appearances would place his continued employment in peril. He seeks a dismissal in the interests of justice.
The People contend the defendant has not set forth any compelling factors which would justify the court’s usage of CPL 170.40 to dispose of the case.
Defendant Logan was arrested on March 8, 1979, and charged with patronizing a prostitute. He is currently unemployed, with no prior arrests. He spent 24 hours in custody on the charge.
Again, the People contend no compelling factors have been set forth.
Defendant Marcus states his grounds for dismissal of the motion are no prior criminal record, two days of incarceration, and no just purpose for more punishment.
Defendant Grayer sets forth no prior criminal record; a steady job, which could be lost on conviction; and an excessive penalty for a "victimless crime.”
The defendants also contend the policy of the office of the District Attorney is not to negotiate a plea for the offense of patronizing a prostitute. They allege this policy and the penalties facing them are overly severe and totally disproportionate to the nature of the offense charged.
The court is faced with the issue of whether the arrest of the defendants on the offense of patronizing a prostitute is such that it should be dismissed in the interests of justice.
The State Legislature has recently seen fit to increase the possible punishment of the existing enactment with a view— realistic or not — to curb the activity of the "oldest profession” —prostitution.
*546 The former statute, section 230.05 of the Penal Law, was a single-offense statute which was classified as a violation, with the maximum sentence of 15 days (Penal Law, § 70.15, subd 4). Currently, the statutorial scheme provides four classes of offenses (Penal Law, §§ 230.03, 230.04, 230.05, 230.06) with heightened degrees (to a D felony) as the age of the prostitute drops. The revamping is aimed at curbing childhood prostitution.
Our concern is with section 230.03 of the Penal Law. It deals with adult prostitutes and carries, as a B misdemeanor, a maximum sentence of three months (Penal Law, § 70.15, subd 2).
The former statute evolved to clear up the problem of enforcing the prostitution phase of the former vagrancy statute (Code Crim Pro, § 887, subd 4) against the patron as well as the prostitute. So in 1965, the Legislature enacted section 230.05 of the Penal Law (L 1965, ch 1030, eff Sept. 1, 1967).
The reasoning behind its enactment was: (1) to penalize the prostitute alone was unjust; and (2) this step would aid in curtailing prostitution. (Denzer and McQuillan, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 235.05.)
The latest updating of the offense of patronizing a prostitute equates the penalties for prostitution (Penal Law, § 230.00) and for patronizing a prostitute.
Next, we must examine the concept of a dismissal in the interests of justice.
CPL 170.40 states: "An information * * * may be dismissed in the interest of justice * * * when, even though there may be no basis for dismissal as a matter of law * * * such dismissal is required as a matter of judicial discretion by the existence of some compelling factor, consideration or circumstance clearly demonstrating that conviction or prosecution of the defendant upon such accusatory instrument or count would constitute or result in injustice.” (Emphasis added.)
The court readily concedes the law is at best an imperfect instrument. It is couched in absolute terms. It occasionally snares an individual "who, should he be convicted of an offense would suffer more grievously than justice would require” (People v Davis, 55 Misc 2d 656, 659).
The court is cognizant of the fact that while dismissal of an information in the interest of justice is entirely discretionary *547 with the court, such discretion is neither absolute nor uncontrolled (see People v Wingard, 33 NY2d 192; People v Burke, 79 Misc 2d 46). Indeed, the discretion of the court should be founded only on fully deliberated considerations.
In People v Clayton (41 AD2d 204, 208) the Appellate Division, Second Department, has set forth the factors to be considered in dismissing a case in the interest of justice. These factors are: (a) the nature of the crime; (b) the available evidence of guilt; (c) the prior record of the defendant; (d) the punishment already suffered by the defendant; (e) the purpose and effect of further punishment; (f) any prejudice resulting to the defendant by the passage of time; and (g) the impact on the public interest of a dismissal of the information. Further, the court stated (p 208): "The sensitive balance between the individual and the State that must be maintained in applying the test of the interests of justice which CPL 210.40 contemplates moves in response to factors largely resting on value judgments of the court.”
The guidelines in Clayton serve as a basis for determining a motion to dismiss in the furtherance of justice, and discretion given to the court is great indeed. The instant cases are not those which cry out for "fundamental justice beyond the confines of conventional considerations”. (Judge Fuchsberg in his concurring opn in People v Belge, 41 NY2d 60, 63.)
The purpose of the discretionary power of the court under CPL 170.40 is to allow, albeit under very limited circumstances, "the letter of the law gracefully and charitably to succumb to the spirit of justice.” (People v Davis, supra, p 659.) This court has posed the question as to whether this situation is one which "cries out for fundamental justice beyond the confines of conventional considerations”. (People v Belge, supra, pp 62-63.) Upon close scrutiny, it must be concluded that it does not.
The defendants are suffering from a sociolegislative shock. Formerly, the "John” was the forgotten individual in a prostitution arrest. Rarely, if ever, was the "John” even arrested. The offense was a violation. Now, the Legislature has seen fit to raise the offense to a class B misdemeanor. The concept of "red light” districts has been discussed in viable terms. An area similar to the one set up in Boston has been discussed. The crime of prostitution has been discussed in enlightened terms of a "victimless” crime — two consenting adults with no one getting hurt.
*548 Others have argued with the term "victimless.” They point to pimps abusing their "stable”; young children entering and being forced to enter the "profession”; assaults and robberies perpetrated on Johns by prostitutes and pimps; prostitutes abusing innocent passersby; and excessive, unchecked street prostitution causing neighborhoods and businesses to be adversely affected to the detriment of many.
Obviously, the Legislature feels the crime of prostitution is far from victimless and has sought to punish the customer of the prostitute more severely.
The District Attorney seeks to reinforce the concept that the John is engaging in an illegal activity by strictly enforcing the statute.
The fact that the Legislature has seen fit to upgrade the offense, from a violation to a B misdemeanor clearly demonstrates that it feels putting greater sanctions on the "John” is one way of stemming the prostitution situation that is clearly evident in Manhattan (much to the detriment of business and commerce in much of Manhattan). This cannot be taken in a light manner from a judicial point of view.
The evidence against each individual is substantial as to the offense charged.
The defendants view the offense in terms of a violation. The offense being upgraded by the Legislature, coupled with the District Attorney’s stance, is being used to diminish street prostitution.
The attitude brought forth is a liberated one, not in the sense of considering prostitution a victimless crime, but in setting up parity as to possible punishment for the prostitute and the patron.
Obviously, the "get tough policy” is to make it known that "Johns” will face prosecution too.
The nature of the crime has been viewed in a new light. The Legislature feels tougher penalties for the patron will diminish street prostitution.
Each defendant allegedly approached an undercover policewoman and sought sexual intercourse. The evidence seems readily available in each case.
The defendants have suffered no more than any other defendants accused of a B misdemeanor offense. The offense is no longer merely a violation.
It is true that the defendants were never arrested prior to *549 their arrest on the charges here and have been subjected to some incarceration. They also claim other difficulties arising from their arrests on this charge. These factors do not amount to compelling circumstances.
The impact to the public if dismissals were granted here would be adverse. The Legislature has deemed fit to make an attempt to curb prostitution. For this court to dismiss these cases or treat them as a violation would defeat the legislative intent.
The court will now direct itself to the policy of the District Attorney in not granting adjournments in contemplation of dismissal as to the crime of patronizing a prostitute. Defendants allege constitutional infringement through this policy.
The office of the District Attorney has taken a position that it will not take pleas as to the offense of patronizing a prostitute. The issue is raised by defendants as to whether or not this tack taken by the prosecutor’s office constitutes a deprivation of the rights of defendants charged with the offense in question.
The benefits of plea bargaining are known. Plea negotiation relieves court congestion and literally staves off collapse of the law enforcement system. It relieves prosecution and defense from the inevitable risks and uncertainties of trial. It allows the court to tailor sentences to fit the offense and the offenders and sometimes avoids mandatory and harsh sentences (see People v Selikoff, 35 NY2d 227, for the virtues of plea bargaining).
There is, of course, a need for plea bargaining. It is a necessary and recognized procedure. The United States Supreme Court has said as much in Santobello v New York (404 US 257, 260) when it stated: "The disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called 'plea bargaining,’ is an essential component of the administration of justice. Properly administered, it is to be encouraged”.
On the other hand, it has been held that there is no constitutional right to a plea bargain (Weatherford v Bursey, 429 US 545; People v Peterson, 91 Misc 2d 407; People v Gardner, 78 Misc 2d 744).
In People v Gardner (supra), the defendant had been indicted on counts of criminal sale of a controlled substance and *550 two counts of criminal possession of same; both are class A-III felonies. The defendant sought a dismissal of the indictment in that the punishment imposed by the statute constituted cruel and unusual punishment and denied drug offenders the equal protection of the law.
In part of his attack, the defendant alleged CPL 220.10 (subd 6, par [a]) which precluded defendants accused of a class A felony, as defined in section 220.00 of the Penal Law, to plead to anything less than a class A felony. The defendant alleged that those persons accused of class A-III felonies (drug related) were discriminated against, for those accused of A-I, A-II, B, C, D, and E felonies could plead down.
Citing Newman v United States (382 F2d 479), the court stated (p 754): "an accused does not have a fundamental constitutional right to negotiate a plea to anything less than the entire indictment found against him. Nor does an accused have an absolute right to have a guilty plea accepted” (Lynch v Overholser, 369 US 705; Santobello v New York, supra, p 262).
The court concluded (p 754): "there is nothing in the Federal or New York Constitutions which prevents the Legislature from reasonably restricting the right of any class of defendants to plead to reduced criminal charges. Nor is there any constitutional bar to the Legislature’s enactment of criminal laws which treat different classes of accused offenders in different ways insofar as the right to negotiate pleas to lesser crimes is concerned.” Thus, the statutory scheme restricting the right of a class of defendants to plead to reduced charges is permissible.
The statutory scheme is not too dissimilar from the "Major Offense Program” being instituted by various prosecutors’ offices (see People v Peterson, supra). There, the District Attorney’s office is allocating resources as to personnel in order to discharge the duties of his office as efficiently as possible. This would include the right to focus attention upon the prosecution of those charged with serious crimes, or on those offenses which need special attention and from which the public seeks some relief, i.e., prostitution and related offenses.
Basically, if different persons receive different treatment at the hands of a government agency, this fact, without more, does not demonstrate constitutional inequality (United States v Bell, 506 F2d 221). The constitutional test would be whether *551 a particular policy, in this case of the District Attorney’s office, has discriminated against a class or individual on the basis of race, religion, or some arbitrary classification.
This does not appear to be the case here.
There is unfettered discretion in the District Attorney to prosecute or not (People v Harding, 44 AD2d 800). In his role as a constitutional officer with quasi-judicial authority, the District Attorney has wide latitude in the discretionary exercise of his duty to prosecute crimes (Kerstanski v Shapiro, 84 Misc 2d 1049). Due to the presumption of impartiality of the office, the District Attorney has a wide latitude to determine "whom, whether and how” to prosecute (People v Lofton, 81 Misc 2d 572; People v Krstovich, 72 Misc 2d 90).
The defendants would surely argue that the situation here, whereby the People refuse to take a plea, transfers too much power in the hands of the prosecutor’s office in that that office now has a greater power of punishment over defendants charged with the offense.
Yet the District Attorney’s office is merely exercising the right of prosecutorial discretion. "[A]ny discretionary power may be abused, and unlawful discrimination in the exercise of a prosecutor’s power * * * would violate the equal protection guarantee of the Constitution.” (People v Eboli, 34 NY2d 281, 290; People v Gardner, 78 Misc 2d 744, supra.)
No discrimination exists here. The District Attorney’s office will not allow any defendants charged with the offense in question to take a plea. It is obviously an attempt by the District Attorney to deter prostitution by placing increased possibilities of incarceration and penalties against "Johns.” No discriminatory practices are being exerted against any individual; all those arrested for the offense are being treated in the same manner.
The defendants would have a large task in showing unlawful discrimination here. It is not enough to say, "this is the only offense in which the District Attorney takes this position.” The District Attorney’s position reflects a stand to which there is some logic and reason — no pleas possible, longer sentences, deterrence, less crime.
Prosecutorial discretion is substantial. The defendant must clearly show unlawful discrimination before the policy can be overturned. They have not done so here.
While high regard should be given to the policies of the *552 office of the District Attorney, the court must state unequivocally that it deplores the rigid policy of that office. Arresting and detaining defendants in lieu of issuing a desk appearance ticket and taking an inflexible stand as to issuing adjournments in contemplation of dismissal (CPL 170.55) are policies that are unnecessary and border on harassment.
While this court feels its function is not to utilize CPL
170.40 as a countermeasure to neutralize the policies of the office of the District Attorney, it is sorely tempted to do so.
The court is aware of several recent decisions whereby CPL 170.40 has been utilized to alleviate the policies of the District Attorney. (People v James, 98 Misc 2d 755) indicated the prostitute is the victim, the cost of prosecution was great, and the prosecution of the defendant solved nothing. In People v Doe (NYLJ, April 6, 1979, p 12, col 3), the court concluded the "emotional and psychological incarceration” of the defendant should be terminated even in light of the unyielding stand of the People in not granting an adjournment in contemplation of dismissal.
Both cases reflect an attempt by the judiciary to unravel a position by the People. The court agrees with its colleagues but in spirit only, for the concept of the dismissal in the interest of justice must be used sparingly and only in the most compelling circumstances.
Fundamentally, at issue here is this court’s philosophy regarding the interrelationships of the judiciary and those elected to enact laws and those chosen by the electorate to enforce those laws. It is this court’s belief that the judiciary should impede an otherwise legitimate prosecutorial policy only when the most compelling circumstances dictate such intervention.
The above cases presently before this court appear custom made for the adjournment-in-contemplation-of-dismissal provision. The People, however, feel the problem of prostitution will be abated by taking a hard line. This court cannot agree. Prostitution is an age old and complex issue with many deep socioeconomic and psychological ramifications. The policy of the People might lessen street prostitution while increasing the business of those operations with more sophisticated methods of soliciting customers.
While this court does not profess to have the solution (if there is one) to the issue of prostitution, the People’s intransigent stand in not considering adjournments in contemplation *553 of dismissal on a case-by-case basis as to the offenses of prostitution and patronizing a prostitute is not the solution.
For the reasons stated above, the defendants’ motions seeking dismissals in the interests of justice are denied.