OPINION OF THE COURT
Bertram Katz, J.
The defendant, Lisa Williams, has challenged the Bronx District Attorney’s practice of reducing certain A misdemeanor cases (punishable by a maximum term of one year) to B misdemeanors (punishable by a maximum term of three months) on the eve of trial. The effect of the last-minute reduction, besides providing an obvious benefit to the defendant, is to deprive the defendant of the right to trial by jury. The Legal Aid Society, which represents numerous defendants affected by this procedure, in addition to Lisa Williams, has brought this motion in virtually identical form throughout the Bronx Criminal Court. It is therefore necessary to discuss the relevant issues at some length.
*69 This particular defendant’s progress through the criminal justice system is illustrative of the pattern that the District Attorney has been following. The original charges were assault in the second degree and criminal possession of a weapon in the fourth degree. Both charges arose out of an incident at Montefiore Hospital. While being treated there, the defendant is alleged to have struck a hospital official with a cane, causing serious physical injury. On one of defendant’s numerous court appearances, the felony assault charge was reduced to assault in the third degree, a class A misdemeanor. The stage was now set for the controversial reduction procedure. On the brink of trial, the District Attorney reduced both charges to attempts (Penal Law, §§ 110.00, 120.00, and §§ 110.00, 265.01, respectively) on oral application over vigorous defense objections. The reduced charges are B misdemeanors. This court then granted leave to the defendant to challenge the procedure through written motion.
The defendant has attacked the reduction on four grounds:
(1) No reduction of charges may take place in the absence of notice and an opportunity for the defendant to be heard. Absent strict compliance with CPL 100.45 (subd 3), the court lacks subject matter jurisdiction over the reduced charges, which therefore must be dismissed.
(2) Attempted assault and attempted possession of a weapon are illusory or hypothetical crimes concocted by the prosecution with the sole purpose of depriving the defendant of her right to trial by jury without due process of law.
(3) An attempt to commit a crime cannot be charged where the original information charges a completed crime, and where the sole purpose of charging the attempt is to avoid a jury trial.
(4) The crimes of attempted assault and attempted possession of a weapon are by their very nature serious crimes that entitle the defendant to a trial by jury. They are malum in se crimes indictable at common law; the court, therefore, may not look solely to the extent of punishment provided by law to determine whether these crimes are “serious” or “petty”.
*70 Other defense arguments include the allegation that the District Attorney’s reduction to a B misdemeanor usurps a legislative function, and that the attempted crimes are void for vagueness.
Finally, the defendant has moved for dismissal in the interests of justice. (CPL 170.40.)
NOTICE UNDER CPL 100.45
The court will not dwell too long on the defendant’s theory that a reduction made in the manner of the District Attorney in this case must comply with the notice provisions of CPL 100.45 (subd 3). A cursory reading of CPL 100.50 (subd 2), which is the relevant statute, would reveal that no notice, opportunity to be heard, or adjournment was required in this case. The District Attorney filed an information charging offenses fully supported by the facts in the original information. (Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 100.50, p 99.)
People v Harper (37 NY2d 96), also cited by the defense, is inapposite. The challenge in that case was to the addition of unrelated charges without notice, not to the reduction. The court concludes that there is no merit to that part of the defendant’s motion based on notice.
HYPOTHETICAL CRIMES
A more interesting proposition is that the reduction from charges of completed crimes to attempted ones is an intentional deprivation of the defendant’s right to a jury trial in violation of due process of law. Indeed, the court cannot close its eyes to this concerted course of conduct by the District Attorney’s office. Often, cases are reduced even after being sent down to the Jury Parts of the Criminal Court. It is no secret that the procedure[1] is an intentional one to lighten the backlog in the jury parts, to reduce the District Attorney’s own misdemeanor workload, and to dispose of as many cases, upon proper re-evaluation, as is possible. The prosecutor has the legitimate right to take into account his staffing and budgetary considerations in deciding which cases to subject to lengthy jury trials and which to dispose of as expeditiously as possible.
*71 Nor can it be argued that any one defendant is being singled out for special treatment by the People. One of the Legal Aid attorneys has graciously provided the court with a listing of 16 separate instances of last-minute reductions, demonstrating just how pervasive and routine the practice has become.
Nonetheless, the court is compelled to agree with the defendant that the prosecutor’s right to reduce cases in derogation of the right to trial by jury is not absolute. One limitation is the doctrine of hypothetical crimes. The only time when hypothetical crimes may be accepted by the court is for the purpose of pleas. (People v Schmidt, 76 Misc 2d 976.) In Schmidt and in People v Howlett (76 Misc 2d 801 [App Term, 1st Dept]), convictions on the hypothetical crime of attempted resisting arrest were reversed. The Howlett court held that it was error for the court to accept the reduction in the first instance.
These cases stand for the proposition that there cannot be an attempt to commit a crime which is in itself a mere attempt to do an act or accomplish a result.
Examples of hypothetical crimes include “attempted jostling” (People v Lynn, 115 Misc 2d 76), “attempted obstruction of governmental administration” (People v Schmidt, supra, p 976), “attempted felony murder” (People v William M. T., 82 Misc 2d 308, 309; People v Hendrix, 56 AD2d 580, affd 44 NY2d 658) and “attempted manslaughter” (People v Foster, 19 NY2d 150, 152; People v Brown, 21 AD2d 738). The latter two “crimes” are illogical in a way distinguishable from the crimes in Schmidt, Howlett, and Lynn: the substantive crimes of felony murder and manslaughter lack the specific intent required by the attempt crimes. However, all hypothetical crimes are alike in that they are inherently illogical and are therefore impossible of commission.
The charges that the prosecutor has fashioned in this case fall into a different category. These charges are not illogical or impossible under any statement of facts. They are, however, inconsistent with the initial information filed, which charged completed crimes, not attempts. That information read, in pertinent part, as follows: “the defendant did unlawfully and knowingly have in her possession *72 a dangerous instrument to wit, a wooden cane, with the intent to use said dangerous instrument against another, in that the defendant with the intent to cause physical injury to another did in fact cause such injury to the informant by the defendant striking the informant on the forehead with the aforementioned wooden cane and causing the informant to sustain a laceration of the forehead and making it necessary for the informant to be removed to Montefiore Hospital and receiving 10 stitches for said laceration.”
An “attempted assault” has been upheld under certain singular fact patterns. For example, in People v Robinson (71 AD2d 779), a prison inmate was convicted of attempted assault where he struck a guard with his fist, causing pain but no physical injury. (See, also, People v Asan, 22 NY2d 526.)
Attempted possession of weapons, drugs or stolen property might occur in either of two ways: impossibility cases under Federal law and section 110.10 of the Penal Law, and those cases in which premature arrests were made by the authorities. In United States v Marin (513 F2d 974) impossibility was ruled no defense to a charge of attempted possession of cocaine, where the defendant was arrested in possession of a Federal agent’s “dummy” package containing starch and quinine instead of drugs. Under subdivision (c) of rule 31 of the Federal Rules of Criminal Procedure (US Code, tit 18, Appendix), applied in Marin, a conviction for an attempt may lie even if the indictment charges a completed offense. Other impossibility cases include United States v Henig Awkak Roman (356 F Supp 434, affd 484 F2d 1271, cert den 415 US 978); United States v Sheikh (654 F2d 1057, cert den 455 US 991); People v Ettmann (99 Misc 2d 120); People v Rosencrants (89 Misc 2d 721); and People v Vandercook (99 Misc 2d 876; see Ann., 85 ALR2d 259).
An example of a case of “premature arrest” is United States v Cafaro (480 F Supp 511 [SDNY]), where the defendant arranged a drug purchase over the phone and was seized in the lobby of the seller’s apartment in possession of $10,000 in cash. The conviction for attempted possession and distribution of a controlled substance was *73 upheld (p 515): “The Government need not wait until the alleged offense is complete, or even nearly complete, before intervening to prevent commission of the crime.” There was a similar fact pattern in United States v Manley (632 F2d 978).
If the charges facing this defendant are not hypothetical for all purposes, they are certainly inconsistent with the theory of the prosecution as expressed in the original information. The conclusion is inevitable that the sole purpose of the reduction was to avoid a jury trial. Should not the charges therefore be dismissed on the authority of the Howlett decision?
The defendant’s theory is a compelling one which the court might be inclined to adopt were it not for the legislative revision of the attempt statute, section 110.00 of the Penal Law.
THE REVISED LAW OF ATTEMPT
Can a defendant be charged with and convicted of an attempt where the proof elicited during trial evinces a consummated crime? It has been established that a jury, or a Judge at a Bench trial, may not consider attempt as a lesser included offense, where no reasonable view of the evidence would support anything but conviction for the consummated crime, or acquittal. (People v Hart, 64 AD2d 672; People v Richette, 33 NY2d 42; People v Discala, 45 NY2d 38.) In this context, an attempt may be considered by the trier of fact only in “close case[s].” (People v Richette, supra, p 47.)
Former section 2 of the Penal Law defined an attempt to commit a crime as “[a]n act, done with intent to commit a crime, and tending but failing to effect its commission” (emphasis supplied). The last six words are at the heart of the matter. The draftsmen of section 110.00 of the Penal Law, which is now in force, purposely omitted the reference to lack of consummation, which has been interpreted by Denzer in his Practice Commentary (McKinney’s Cons Laws of NY, Book 39 [1967 vol], Penal Law, § 110.00)[1] — *74 and cited with approval by the Court of Appeals in Richette (supra) — to mean that conviction for an attempt is no longer precluded by the fact that the crime was completed. The law operates to the advantage of the prosecutor who reduces charges to attempts, but not to that of the defendant charged with and found guilty of a completed crime, except in close cases. (People v Richette, supra, at p 46.)
The Penal Law revision allows the prosecutor to “over-prove” his case; e.g., to prove the actual possession of a weapon where a charge of attempted possession is brought. As a practical matter, where the attempted crimes are actually possible of commission, as they are here, under the old law a Trial Judge would have had to prejudge the evidence in order to disallow a District Attorney’s reduction to an attempted crime. The legislative change makes this difficult decision unnecessary.
The Richette court also noted that former section 260 of the Penal Law empowered a Trial Judge hearing a trial on an attempted crime to discharge the jury and order a retrial on the substantive crime, where the evidence unfolding at the trial indicated that the crime was completed. The fact that this judicial interference with the prerogative of the prosecutor has not been restored to the Penal Law leads to the conclusion that the prosecutor has been given great flexibility in this area. In the view of some scholars, it is perhaps too great. (See 94 Harv L Rev 1521.) .
Under CPL 1.20 (subd 37), attempts which are legally possible of commission are lesser included offenses of the substantive crimes. Had the Legislature wished to limit the array of charges available to the prosecutor, they certainly could have found the words to express it. The liberal language used in CPL 100.50 (subd 2) is yet another example of this legislative philosophy.[2]
Where the District Attorney is merely making use of the tools purposely provided to him by the legislative *75 draftsmen, he can hardly be accused of usurping a legislative function.
As a result of this analysis of the law of attempt, the court also rejects the argument that these charges are unconstitutionally vague. (United States v Harriss, 347 US 612.) The cases cited by the defense are not similar in any regard to the charges involved in the instant case.
The court concludes that the District Attorney may reduce substantive offenses to attempts where the allegations in the original information make out a completed act. The defendant’s motion based on the argument that the charges are hypothetical, or could not constitutionally be reduced to attempts, is denied.
THE “SERIOUS” V “PETTY” DISTINCTION
The purpose behind the right to trial by jury is to prevent the possibility of oppression by the government, to interpose between the accuser and the accused a neutral entity that would be less likely to function as another arm of the government prosecuting the defendant. (Baldwin v New York, 399 US 66, 72.) Even while recognizing the importance of the jury trial, the United States Supreme Court has gradually limited the right to “serious” as opposed to “petty” crimes. The Baldwin court held that no offense, no matter how labeled by the particular State Legislature, could be termed “petty” where imprisonment for more than six months (or a fine greater than $500) was authorized. Although the six-month mark was not explicitly made a rigid dividing line whereby imprisonment for six months or less ipso facto denoted a petty crime, the Supreme Court cases that followed, such as Argersinger v Hamlin (407 US 25, 29), have at the very least implicitly adopted a six-month rule: “[t]he right to trial by jury * * * [is] limited * * * to trials where the potential punishment [is] imprisonment for six months or more.”
The defendant cannot concur with the theory that length of sentence is the sole factor to be considered. She argues that the charges are inherently serious in spite of the three-month maximum sentence. The defendant has tied her argument to a very old war horse, District of Columbia v Colts (282 US 63). In 1930, Justice Sutherland em *76 ployed a sophisticated analysis, which the defense advocates that the court adopt: “Whether a given offense is to be classed as a crime, so as to require a jury trial, or as a petty offense, triable summarily without a jury, depends primarily upon the nature of the offense. The offense here charged is not merely malum prohibitum, but in its very nature is malum in se. It was an indictable offense at common law”. (282 US, at p 73.)
The charge in the Colts case (supra) was reckless driving; the maximum authorized sentence in this more innocent time was 30 days. Emphasizing the character of the automobile as a dangerous instrumentality, and relying on the possibility of one year’s incarceration for repeated offenses, the court concluded that this was a serious crime that should be heard by a jury in spite of the petty sanctions.
To bolster this case from an earlier age of automotive travel, the defense has cited two recent cases from the Ninth Circuit Court of Appeals, United States v Craner (652 F2d 23) and United States v Sanchez-Meza (547 F2d 461). Craner was convicted of driving under the influence of alcohol in a national park. The Ninth Circuit disregarded the six-month/$500 standard, and instead looked to “the nature of the offense.” Most States within the Ninth Circuit considered intoxicated driving a charge serious enough to provide a jury trial for it. In addition, the possibility of forfeiting one’s license to drive was regarded as a serious consequence. The controlling factor, however, was the peculiar statutory scheme of punishment promulgated by the Secretary of the Interior, which meted out the same sanctions for such offenses as “climbing Mt. Rushmore” as it did for intoxicated driving. Since this haphazard regulation could not be called a “considered legislative judgment of the gravity of the offense” the length of sentence analysis was rejected by the Craner court (supra, p 25), and the right to trial by jury was held to attach.[3]
Mr. Sanchez-Meza was allegedly an illegal alien whose felony arrest was reduced to the misdemeanor of conspiracy to elude examination by immigration officers. Delving *77 into the history of conspiracy as a malum in se crime, the court applied the “nature of the offense” analysis, and found conspiracy even in its misdemeanor form to be a serious crime requiring a jury trial. The court emphasized that the Supreme Court had never overridden two “nature of the offense” cases, Colts (supra) and District of Columbia v Clawans (300 US 617), although it had had ample opportunity to do so. Thus, the Ninth Circuit would limit the Baldwin decision to the rule that “a potential sentence in excess of six months’ imprisonment is sufficiently severe by itself to take the offense out of the category of ‘petty.’ ” (Baldwin v New York, 399 US, at p 69, n 6.)
The Baldwin decision in 1970 compelled the New York State Legislature to draft the present statutory scheme limiting the right to trial by jury (CPL 340.40; Denzer, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 340.40, pp 59-63). Although the parties have understandably dwelt on Supreme Court cases, it is sometimes helpful to leave the ratified air of the high court and examine two recent lower court decisions that attempted to circumvent the simple standards of CPL 340.40: People v Carolyn S. (92 Misc 2d 674) and People v Link (107 Misc 2d 973 [Erlbaum, J.]). In Carolyn S., the denial of the right to trial by jury to a youthful offender, subject to a term of probation for up to three years, was held unconstitutional. This argument was sharply criticized by the Appellate Term of the First Department in People v Denning (98 Misc 2d 369), which upheld the constitutionality of CPL 340.40.
In the Link case, Judge Erlbaum ruled that loitering for the purposes of prostitution was an inherently “serious” crime despite the maximum of three months’ incarceration provided by law, since a unique stigma attached to those women convicted of the offense. Faced with incipient disaster in the Jury Parts of the Criminal Courts, the District Attorney of Manhattan brought a declaratory judgment action. The Special Term of New York County overturned Judge Erlbaum’s determination (Matter of Morgenthau v Erlbaum, 112 Misc 2d 30), which was characterized as “overreaching.” Recently, the Court of Appeals has agreed. (59 NY2d 143.)
*78 It is the opinion of this court that the Court of Appeals decision in Morgenthau (supra) unquestionably delineates the present limitations on the right to trial by jury in the State of New York. The rule cannot be limited to prostitution cases. The Morgenthau court forbade Judges to make subjective decisions on the inherent seriousness of each crime, a system which would lead to uncertainty and varied results throughout the State court system. The “nature of the offense” analysis is no longer viable, in the court’s view (pp 153-154): “[Rjecent Supreme Court decisions have emphasized the length of the sentence to the exclusion of virtually nearly everything else. The penalty is deemed of major relevance, a gouge of the locality’s social and ethical judgments on the heinousness of the offense”. It is for the Legislature to gouge societal attitudes and to set proportionate sanctions.[4]
Since the defendant faces at worst incarceration for a period of three months, the court holds that the charges are petty and that the defendant is not entitled to a trial by jury. Nor do I find persuasive the defendant’s allusions to the disgraceful state of our correctional facilities. Incarceration in such places is indeed a “serious” matter, but this argument was taken into account by the Baldwin decision (supra, p 73): “the prospect of imprisonment for however short a time will seldom be viewed by the accused as a trivial or ‘petty’ matter and may well result in quite serious repercussions * * * these disadvantages, onerous though they may be, may be outweighed by the benefits that result from speedy and inexpensive nonjury adjudications.”
PROSECUTORIAL DISCRETION
In reaching this decision, it is incumbent upon the court to pay homage to the prosecutorial prerogative.
The District Attorney has almost unfettered discretion in determining how and when to prosecute, including the right to reduce, add or amend charges. (United States v Lovasco, 431 US 783; People v Di Falco, 44 NY2d 482; People v Bowman, 88 Misc 2d 50.) The court may not act as the supervisor of the District Attorney, who is given free *79 rein in his areas of discretion. (Inmates of Attica Correctional Facility v Rockefeller, 477 F2d 375; Matter of Hassan v Magistrates’ Ct., 20 Misc 2d 509, opp dsmd 10 AD2d 908, mot for lv to opp dsmd 8 NY2d 750, cert den 364 US 844.) The defendant may not choose which of two applicable statutes he may be prosecuted under. (People v Eboli, 34 NY2d 281.)[5]
The legitimacy and value of plea bargaining and speedy adjudication through nonjury trials have been judicially recognized as an essential part of the criminal justice system. (See Corbitt v New Jersey, 439 US 212; Bordenkircher v Hayes, 434 US 357; Baldwin v New York, supra.) Some of the benefits include relieving court calendar congestion, sparing the prosecutor and defendant the inevitable risks and uncertainties of trials, and telescoping the entire process so that the convicted defendant may complete his sentence earlier. (People v Selikoff, 35 NY2d 227, cert den 419 US 1122.)
The District Attorney’s tactic of delaying the reduction until the last possible instant before trial is presumably geared towards eliciting pleas from reluctant defendants. There is undeniably an element of gamesmanship to this practice that the court does not find entirely satisfactory. However, even where the court may deplore a certain policy of the prosecutor, e.g., the District Attorney’s crackdown on “Johns” in People v Izsak (99 Misc 2d 543), it is not the proper judicial function to intervene. Mere disagreement with a prosecutorial policy, which is otherwise constitutional, is not grounds for judicial intervention in the absence of compelling circumstances. (.People v Izsak, supra; United States v Shaw, 226 A2d 366 [DC App]; United States v Fleming, 215 A2d 839 [DC App].)
The proper functioning of the criminal justice system requires that society rely on the good judgment of its prosecutors to charge crimes fairly. If restrictions on this discretion are required, “the remedy would appear to lie in the creation of general methods, perhaps administrative, *80 to structure and direct that discretion.” (.People v Eboli, supra, at p 290.)
The defendant’s motion attacking the District Attorney’s reduction procedure on procedural and constitutional grounds is denied in all respects.
However, the defendant Williams has also brought a Clayton motion (CPL 170.40). The defendant allegedly suffers from a condition known as sarcoidosis, which, from the documentary evidence submitted, appears to be a very serious illness. From the motion papers, the court cannot determine with certainty whether the further prosecution of this matter would work an injustice. A hearing is hereby ordered to determine whether compelling factors exist warranting dismissal of this matter. (CPL 170.40; People v Boynton, 67 AD2d 982; People v Clayton, 41 AD2d 204, on remand 76 Misc 2d 512.)

. Section 110.00 of the Penal Law: “A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime.” (See Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 110.00, pp 309-310.)

. CPL 100.50 (subd 2), reads as follows: “At any time before entry of a plea of guilty to or commencement of a trial of an information, the district attorney may file with the local criminal court a prosecutor’s information charging any offenses supported, pursuant to the standards prescribed in subdivision one of section 100.40, by the allegations of the factual part of the original information and/or any supporting depositions which may accompany it. In such case, the original information is superseded by the prosecutor’s information and, upon the defendant’s arraignment upon the latter, is deemed dismissed.”

. But see United States v Arbo (691 F2d 862), limiting United States v Craner (652 F2d 23) to extraordinary circumstances.

. See criticism of this alleged abandonment to the Legislature in Craner (652 F2d, at p 26, n 4).

. The major restraints on the discretion of the prosecutor are those cases of vindictiveness and discrimination. (Blackledge v Perry, 417 US 21; United States v Goodwin, 457 US 368.) But selective enforcement by itself is not unconstitutional. (Oyler v Boles, 368 US 448.)