OPINION OF THE COURT
Harold Adler, J.
This case involves some of the most volatile issues facing the criminal justice system, including matters of race, the difficulty *410 of some courts to sustain any meaningful trial capacity and the common practice of prosecutors reducing charges on the eve or day of trial. This latter practice, sometimes resulting in the forfeiture of a defendant’s right to a jury trial, is a convention often despised by the defense bar.
The defense makes an unusual and creative argument to extend Baison-like race issues to the prosecutor’s motion to reduce the charges down from class A misdemeanors. Because defendants who are charged with misdemeanors of the class B level or lower are entitled only to a bench trial, not a jury trial (CPL 340.40 [2]; Matter of Morgenthau v Erlbaum, 59 NY2d 143 [1983]; Baldwin v New York, 399 US 66 [1970]), a prosecutor’s act of reducing charges down from class A misdemeanors routinely denies a defendant the option of a jury trial. In an attempt to retain the option of a jury trial, the defense in the current case opposes the People’s motion to reduce the class A misdemeanors. It argues that because the defendant here is African-American, the complainant is European-American, and many Bronx jurors are minorities, the People must provide a race-neutral reason for the reduction.
In the accusatory instrument dated June 6, 1996, the defendant was charged with Penal Law § 120.00 (1) (assault in the third degree, a class A misdemeanor), Penal Law § 135.05 (unlawful imprisonment in the second degree, a class A misdemeanor) and Penal Law § 240.26 (1) (harassment in the second degree, a violation). On January 24, 1997, the very date this matter was set for trial, the People moved to reduce the two class A misdemeanors to "attempts” (Penal Law §§ 110.00, 120.00 [1]; §§ 110.00, 135.05), thereby transforming these two charges into class B misdemeanors punishable by a sentence not to exceed three months. (See, Penal Law § 110.05 [8].) This court generally disapproves of reductions on the date set for trial as these can be highly prejudicial to the defense and can force them to drastically change its trial strategy. This reduction occurred in excess of seven months after the accusatory instrument was signed and well in excess of eight months after the alleged incident. However, as the new charges here are not hypothetical, illogical or impossible, the People’s motion to reduce was granted subject to the court’s review of the subject defense motion.
To begin with, this court wishes to note that reductions are not always beneficial to defendants. In the instant case, the defendant is a correction officer. Any guilty verdict, even on the violation, might result in loss of job and pension.
*411 The defense’s argument against reduction is purely race based. It contends that the jury pool in the Bronx is largely African-American and Hispanic-American while the Judges in the court are largely European-American. As noted, the defendant is African-American and the complainant is European-American. Because the act of reducing the charges denies the defendant the option of a jury trial, the People are in effect excluding African-Americans and Hispanic-Americans from deciding the facts of the case. The People must therefore provide a race-neutral reason for the reduction or, failing to do this, the court should deny the People’s motion to reduce. The defense develops this concept from Batson v Kentucky (476 US 79 [1986]).
In Batson (supra), the Supreme Court addressed race issues regarding the selection of jurors. The Court added restrictions to the exercise by prosecutors of their peremptory challenges against members of a defendant’s racial class. To succeed initially in erecting the presumption of purposeful discrimination, the defense must demonstrate (1) membership in a "cognizable racial group”; (2) the exercise of peremptory challenges by the prosecutor to exclude members of the defendant’s group; and (3) "facts and any other relevant circumstances rais[ing] an inference” of a discriminatory purpose. (Batson v Kentucky, supra, at 96; see also, People v Scott, 70 NY2d 420 [1987].) At that point the burden shifts to the prosecution to overcome the inference of purposeful discrimination with an articulate and neutral explanation for having excused those jurors.
The defense analogizes Batson (supra) with the current case, and the analogy is not without strong parallels. Batson prohibits the prosecution from systematically excluding prospective jurors of a defendant’s racial group. In the current case, the reduction down from class A misdemeanors would exclude prospective jurors of the defendant’s racial group. And the defense notes that in the current case the reduction of the charges to class B misdemeanors is not occasioned by a change in the factual allegations; the allegations in the accusatory instrument still support class A misdemeanors.
The defense asserts that because the reduction deprives the defendant of a trial by her minority peers, the People must provide an articulate and neutral explanation for the reduction. Otherwise, the court must deny the People’s motion to reduce the charges. This argument flows naturally from the precepts of Batson (supra). Indeed, its logic and theory are outwardly very impressive. However, its effect is hollowed by *412 the fundamental differences between the selection of jurors and the right to a trial by jury — two very distinct ideas.
The precepts of Batson (supra) stem from a line of cases more than a century old, all of which pertain to the selection of jurors. In Strauder v West Virginia (100 US 303 [1879]), the Supreme Court decided that the State denies a black defendant equal protection of the laws when it puts him on trial before a jury from whom members of his race have been purposefully excluded. That case laid the foundation for the notion that a jury must be selected pursuant to nondiscriminatory criteria. (See also, Martin v Texas, 200 US 316, 321 [1906].) "The very idea of a jury is a body * * * composed of the peers or equals of the person whose rights it is selected or summoned to determine; that is, of his neighbors, fellows, associates, persons having the same legal status in society as that which he holds.” (Strauder v West Virginia, supra, at 308.)
Distinct from the issue of the selection of jurors is the issue of the right to a trial by jury. While both issues are powerfully linked to the Constitution, they are treated differently by the courts. Since Strauder (supra), the Supreme Court has repeatedly reviewed the application of jury selection principles to particular facts (see, Batson v Kentucky, supra, at 90, n 13) and has refined numerous principles to ensure the proper selection of jurors. Yet, these principles have not been applied to the right to a jury.
Furthermore, in addition to the legal distinction between the right to a jury trial and the selection of jurors, the practical effect of the defense’s position in this case is problematic. The defense argues that a jury in this case would be mostly minority and the Judge would be European-American. However, this is speculative. The racial makeup of Bronx juries and Judges is actually varied. There are well more than a minimal number of European-American jurors and minority Judges in the Bronx. And not all minority jurors in the Bronx are African-American like the defendant. The precepts of Batson (supra) apply where potential jurors of the defendant’s race are specifically preempted. When charges are reduced from A misdemeanors, all jurors — no matter what race — will be preempted.
Moreover, except sometimes in completely racially homogeneous communities, the denial of a trial by jury will always exclude members of a defendant’s race from serving on the jury. Under the defense’s theory, Batson principles could apply in almost every class A misdemeanor reduction case. There is no precedent or authority for this.
*413 Also, it is very important to note that there is absolutely no indication here that race plays any part in the People’s motion to reduce. There is nothing in law, fact or logic that would allow the court to conclude otherwise or to suggest any improper motive on this sparse record. On the contrary, prosecutors commonly reduce charges for a variety of reasons, including for legitimate trial strategy and for lack of resources. (See, People v Zimmer, 51 NY2d 390, 394 [1980]; People v Foy, 155 Misc 2d 81, 82-83 [Crim Ct, Bronx County 1992]; People v Ortiz, 99 Misc 2d 1069, 1075-1076 [Crim Ct, Bronx County 1979].) In the current case, the prosecution, in their motion papers seeking reduction, asserts legitimate strategy reasons for their motion to reduce: the complainant’s injuries might not rise to the threshold needed for the A misdemeanor charge of assault in the third degree and the confinement of the complainant might not be of sufficient duration to constitute the A misdemeanor charge of unlawful imprisonment.
Finally, the First Department very recently addressed the issue of the prosecutor’s prerogative to reduce. In People v Hodges (NYLJ, Jan. 14, 1997, at 26, cols 3-4 [App Term, 1st Dept]), the court wrote: "Nor is there merit to the defendant’s contention that the People were improperly permitted to reduce the original class A misdemeanor charge of assault in the third degree (Penal Law § 120.00[1]) to the class B misdemeanor attempted assault charge upon which defendant was ultimately convicted. The District Attorney is generally given wide latitude 'in determining when and in what manner to prosecute a suspected offender’ (People v. Di Falco, 44 NY2d 482, 486; see, People v. Zimmer, 51 NY2d 390, 394), and may appropriately move to reduce a charged crime to a lesser offense in circumstances where, as here, the reduced charge is not 'illogical or impossible under any statement of facts’ (People v. Williams, 120 Misc 2d 68, 71; People v. Diaz, 146 Misc 2d 260, 262; People v. Howlett, 76 Misc 2d 801 [reduction to 'hypothetical’ charge of attempted resisting arrest held improper]). That defendant would have been entitled to a jury trial if prosecuted on the original assault charge (CPL 340.40, subd 2) does not provide a basis to deny the otherwise appropriate reduction (People v. Williams, 120 Misc 2d 68, supra).” (Emphasis added.)
As stated in People v Williams (supra; cited with approval by People v Hodges, supra),
"it is incumbent upon the court to pay homage to the prosecutorial prerogative.
*414 "The District Attorney has almost unfettered discretion in determining how and when to prosecute, including the right to reduce, add or amend charges.” (People v Williams, supra, at 78; see also, People v Soto, NYLJ, Apr. 5, 1996, at 30, col 2 [App Term, 1st Dept], lv denied 88 NY2d 942 [1996].)
While the court in the current case is generally displeased with last minute reductions, it appears that it is without authority to deny the People’s motion to reduce. "The courts have recognized that as an incident of the constitutional separation of powers, they are not to interfere with the free exercise of the discretionary powers of the prosecutors in their control over criminal matters.” (People v Ortiz, supra, at 1076; see also, People v Di Falco, 44 NY2d 482 [1978]; People v Bowman, 88 Misc 2d 50 [NY County 1976].)
Although the People ultimately provided in their motion papers legitimate reasons for the reductions, during the prior oral argument they steadfastly refused to provide any reason, in effect claiming an absolute right to reduce without explanation and without review by a court. Notwithstanding somewhat broad language in appellate decisions giving some credence to that argument, no entity in our system of justice or government, not even our trial courts, has any semblance of absolute, nonreviewable authority. In a motion to reduce, a court must retain the authority to insure that any reduction is based upon a lawful evaluation of the evidence.
Reductions on the day of trial can hamper the search for the truth. In the current case, the People moved to reduce only after the case was called in Jury Part 1 to begin trial. There had been no changes in the factual allegations, no indication that the People could not meet their burden of proof under the original charges and no other reason or cause shown to grant the reduction. It was simply unknown why the People were moving to reduce. On the other hand, the defense first appeared on this case on August 1, 1996, over seven months ago. Since that time, the defense had been preparing to defend against the original charges, with an option of a jury trial.
A trial-stage reduction could be patently unfair to the defendant. While there are many proper reasons a prosecutor has for reducing charges, reductions at the trial stage — after the defense’s discovery options have been executed and its trial strategy formulated — can function to place the defendant at an extreme disadvantage or even to deceive her. And the defense has been disadvantaged in three ways. First, the defense was placed at a disadvantage as to the bail process, then disadvan *415 taged as to plea bargaining, and now the defense must reconsider its trial strategy.
In the current case, there is no doubt that the People brought the charges with sincerity and that the charges were not bolstered for trial strategy purposes: the allegations clearly support the initial class A misdemeanors. With certain charges, notably assaults, it is rarely clear at arraignments what the ultimate charges may become, because the extent of injuries are not known at that time. However, in cases where the initial charges are appropriate, a motion to reduce by the People can be suspect unless there are factual or strategic reasons warranting a reduction. In this way, the appropriateness of the initial charges can actually cast a shadow on the People’s motion to reduce.
Reductions on the date of trial are troublesome not only for all the reasons noted above but also because there is an overwhelming public perception that verdicts are determined more by the identity of the trier of fact rather than the quality, character and quantity of the evidence. This cynical public perception is fueled by three recent high profile cases where disparate second verdicts were reached under changed triers of fact. For this reason, last minute reductions that result in a change in the trier of fact are detrimental to the integrity of our courts. At the trial stage, all the processes must be focused on a search for the truth, and no party should gain a victory or suffer a loss by surprise. Although this court disapproves of reductions on the date of trial where the right to a jury is lost, this court is bound by the appellate precedents allowing these last minute reductions.
Accordingly, the People’s motion to reduce is granted. However, this court will adjourn this case a sufficient amount of time to enable the defense to properly prepare for trial under the new, reduced charges.