OPINION OF THE COURT
John H. Wilson, J.
*874 Defendant was initially charged with theft of services (Penal Law § 165.15 [1]), forgery in the third degree (Penal Law § 170.05), criminal possession of a forged instrument in the third degree (Penal Law § 170.20), and resisting arrest (Penal Law § 205.30), all class A misdemeanors. Defendant moved to dismiss the Criminal Court complaint pursuant to CPL 100.40 and 170.35, asserting that the People’s initial complaint was facially insufficient.
In response to defendant’s motion to dismiss, the People filed a superceding complaint which reiterated the charges stated above, except for the substitution of theft of services pursuant to Penal Law § 165.15 (3) in place of Penal Law § 165.15 (1).
Defendant’s motion is denied in part, and granted in part for the reasons stated below.
In the initial complaint, the defendant is alleged to have been observed “wrongfully swiping a bent Metrocard in order to enter the transit system.” The superceding complaint adds the allegations that the deponent, Police Officer James Hughes, observed the defendant bend the Metrocard before swiping it through the turnstile, and that at the time of his arrest, the defendant possessed two more bent Metrocards. Based upon his “professional training as police officer,” Officer Hughes asserts that he is aware that the use of a bent Metrocard is a “commonly used method” of allowing entry “into the transit system without paying the lawful fare.”
This opinion should be read in conjunction with this court’s decision in People v Zayas (8 Misc 3d 879 [Crim Ct, Kings County 2005]), which is rendered contemporaneously with this decision. There the defendant is charged with having possessed and sold “swipes” from an unlimited use Metrocard to people seeking access to the New York City subway system.
This court has observed that as the number of cases of alleged Metrocard misuse being brought by the People increases, there is an ongoing dispute between the People and the defense bar as to the sufficiency of the charges that have been brought against defendants accused of crimes associated with the misuse of Metrocards. This opinion, and the Zayas opinion, are attempts to provide a uniform approach to the legal issues presented by these matters.
As a threshold matter, under CPL 100.50, the People are permitted to amend or supercede the Criminal Court complaint at any time prior to trial. Thus, there is no dispute that the *875 People are entitled to supercede their allegations in a timely fashion, as they have done in this matter. (See, People v Williams, 120 Misc 2d 68 [Crim Ct, Bronx County 1983].)
Under GPL 100.15, every accusatory instrument must contain two elements: (1) an accusatory portion designating the offense charged, and (2) a factual portion containing evidentiary facts which support or tend to support the charges stated in the accusatory portion of the instrument. These facts must provide reasonable cause to believe that the defendant has committed the crime alleged in the accusatory portion of the accusatory instrument. (See, People v Dumas, 68 NY2d 729 [1986].)
Further, under GPL 100.40, a misdemeanor information is facially sufficient if the nonhearsay facts stated in said information establish the following: (1) each and every element of the offense charged, and (2) the defendant’s commission of the crime alleged. If both these factors are present, then the information states a prima facie case, and is sufficient. (See, People v Alejandro, 70 NY2d 133 [1987].)
Applying these principles to the factual allegations before this court, there can be no dispute that the initial theft of services charge pursuant to Penal Law § 165.15 (1) was not applicable to the facts as stated in both complaints. Penal Law § 165.15 (1) applies to the use of a stolen credit or debit card. Under Penal Law § 165.15 (3), a person is guilty of theft of services when “[w]ith intent to obtain railroad . . . service without payment of the lawful charge therefor, or to avoid payment of the lawful charge for such transportation service which has been rendered to him, he obtains or attempts to obtain such service or avoids or attempts to avoid payment therefor by force, intimidation, stealth, deception or mechanical tampering” (emphasis added).
The factual portion of the superceding complaint states that the officer did observe the defendant bend a Metrocard, swipe it through the turnstile, and enter the system. Further, the officer states that based upon his training as a police officer, the bending of Metrocards is a common method employed to avoid the payment of the lawful fare charged for the use of the New York City transit system. While this court has found no statutory definition of the term “mechanical tampering,” common sense dictates that the bending of a Metrocard would constitute such conduct. Thus, the factual allegations stated in the People’s superceding complaint in support of the charge of theft of services under Penal Law § 165.15 (3) are clearly legally sufficient.
As to the charge of resisting arrest under Penal Law § 205.30, this was sufficiently pleaded in both the initial complaint, as *876 well as the superceding complaint. In both complaints, the defendant is alleged to have run away from the police officer. Mere flight has been held to constitute the separate crime of resisting arrest, where the arrest is based upon probable cause. (See, People v Shoulars, 291 AD2d 238 [1st Dept 2002]; People v Castro, 4 Misc 3d 1003[A], 2004 NY Slip Op 50645[U] [Crim Ct, NY County 2004].)
Here, the allegations contained in the superceding complaint, regarding the officer’s observation of the defendant bending the Metrocard, and then swiping it to obtain entry through the turnstile, would constitute probable cause for the defendant’s arrest. His subsequent flight from the officer could then be seen as an attempt to evade his lawful arrest.
Therefore, the defendant’s motion to dismiss the charges of theft of services in violation of Penal Law § 165.15 (3) and resisting arrest pursuant to Penal Law § 205.30 as facially insufficient are denied.
As to the defendant’s motion to dismiss the charge of forgery in the third degree pursuant to Penal Law § 170.05, and the charge of criminal possession of a forged instrument in the third degree in violation of Penal Law § 170.20 for facial insufficiency, defendant raises three issues in support of his motion to dismiss: (1) in the initial complaint, the officer did not allege that he observed the bending of the Metrocard; (2) by what means could Officer Hughes recognize forged Metrocards; and (3) whether or not a bent Metrocard constitutes a “forged” “written instrument.”
The first two issues are factual, and are disposed of by the People’s superceding complaint. There, the People allege that the officer observed the defendant actually bend the Metrocard, and based upon the training the officer has received, he is aware that the bending of Metrocards is a common method used to evade payment of the fare for use of the transit system.
The third issue, however, is one of law, and is the central issue presented by defendant’s motion to dismiss — is a bent Metrocard a forged written instrument?
The People’s position, as stated in their superceding complaint, is that use and possession of a bent Metrocard is a violation of Penal Law §§ 170.05 and 170.20. While this argument appears persuasive on its face, application of basic standards of statutory construction compel this court to reach a different result.
*877 Penal Law § 170.05 states that “[a] person is guilty of forgery in the third degree when, with intent to defraud, deceive or injure another, he falsely makes, completes or alters a written instrument.” (Emphasis added.) The People’s superceding complaint makes clear that the defendant’s bending of the Metrocard constitutes an alteration of a written instrument.
Penal Law § 170.20 provides that “[a] person is guilty of criminal possession of a forged instrument in the third degree when, with knowledge that it is forged and with intent to defraud, deceive or injure another, he utters or possesses a forged instrument.” (Emphasis added.) It is unnecessary to distinguish between the Metrocard the defendant was allegedly observed bending, or the two bent Metrocards he allegedly possessed. In either case, it is obvious that the People’s position is that possession of all three bent Metrocards constitutes the crime of criminal possession of a forged instrument in/the Third degree.
Penal Law § 170.00 (1) defines a “written instrument” as “any instrument or article . . . containing written or printed matter or the equivalent thereof, used for the purpose of reciting, embodying, conveying or recording information . . . which is capable of being used to the advantage or disadvantage of some person.” Under this definition, a Metrocard is clearly a written instrument. It contains “printed matter or the equivalent thereof” (computerized information), is “used for the purpose of’ “conveying or recording information” (fares paid), and “is capable of being used to the advantage ... of some person” (allowing the user entry into the transit system).
However, under Penal Law § 170.00 (6), “[a] person ‘falsely alters’ a written instrument when, without the authority of anyone entitled to grant it, he changes a written instrument ... by means of erasure, obliteration, deletion, insertion of new matter, transposition of matter, or in any other manner, so that such instrument in its thus altered form appears or purports to be in all respects an authentic creation of or fully authorized by its ostensible maker or drawer.” (Emphasis added.)
The New York City Transit Authority does not issue bent Metrocards to legitimate purchasers. Therefore, a bent Metro-card cannot be considered a “forged written instrument” since, in its altered form, it cannot “purportt ] to be in all respects an authentic creation or fully authorized by its ostensible maker or drawer.”
In other words, the bent Metrocard does not, and cannot, purport to be an authentic, fully authorized Metrocard as issued *878 by the Transit Authority since once it is bent, it no longer resembles the card issued by the Transit Authority.
Thus, while there can be no dispute that a Metrocard fits the definition of a “written instrument,” it is clear that the People’s position goes beyond the plain meaning of the language of the applicable statutes.
This issue was reviewed with a different holding in Matter of D.U. (192 Misc 2d 601 [Fam Ct, Queens County 2002]). There the court held that the “bending of the metrocard may constitute an alteration of the written instrument as contemplated by forgery statute.” (192 Misc 2d at 604.) This court specifically declines to follow the holding in that matter. Since the court there did not conduct any review of the definition of a “falsely altered” instrument as stated in Penal Law § 170.00 (6), the court’s analysis in that case is fatally flawed.
Therefore, since the statutory definition of “falsely alter” clearly does not support a finding that a bent Metrocard constitutes an “altered written instrument,” the charge of forgery in the third degree pursuant to Penal Law § 170.05, and the charge of criminal possession of a forged instrument in the third degree in violation of Penal Law § 170.20, must be dismissed as facially insufficient.
All other arguments advanced by defendant in his motion to dismiss have been reviewed and rejected by this court as being without merit.