OPINION OF THE COURT
Harold Adler, J.
During the sixth game of the 1996 baseball World Series more than 56,000 people were assembled at Yankee Stadium and millions were observing the game on television as the defendant allegedly ran shirtless onto the baseball field. On his bare torso were written two messages. On his chest and stomach was written "Howard Stern for President”. On his back was written "Guilliani [sic] kiss my . . .”, with an arrow pointing down to the defendant’s buttocks.
As a result, the game was disrupted for l1/2 minutes and the defendant now stands charged with criminal trespass in the third degree (Penal Law § 140.10 [a]) and disorderly conduct (Penal Law § 240.20 [1]). The defendant moves for dismissal on the ground that prosecution here is discriminatory, violating his rights under the United States and New York State Constitutions, and in the interest of justice pursuant to CPL 170.30 (1) (g) and 170.40.
The mass exhilaration at the sixth game of the World Series was phenomenal and one can imagine how this could inspire the urge to run onto the field. The emotion and adrenalin at Yankee Stadium can be ignitable and one can envisage a Yankees fan being enraptured by exhilaration—you crave more adrenalin, you run onto the Bronx diamond, you’re in the eye of the most electrifying milieu in the universe! At the ceiling of this excitation, under the scrutiny of over 56,000 pairs of frenzied eyes, among hoots, hollers and cheers, the adrenalin rush comes to a crash as you are seized, arrested, brought to the station house and—here’s the most harrowing part—you miss the rest of the game. With the power to inter *63 rupt millions of people the world over, from world leaders to little league youngsters with memories of the bygone spring and aspirations of forthcoming renown, the realization arrives that the season has ended and that this enthusiastic fan has missed the last of the competition.
Nevertheless, it is the District Attorney’s charge to prosecute these cases. The District Attorney’s office has recommended the defendant be given a 90-day jail sentence if he chooses to plead guilty to the charges. The defendant complains that this overture is uncommonly harsh. He notes that another person charged with trespassing (Penal Law § 140.10) on the field of Yankee Stadium during that same World Series game was allowed to plead guilty to disorderly conduct (Penal Law § 240.20) upon the condition that he perform only seven days of community service.
The defendant alleges that his case is being treated more harshly because of the writing on his body. He notes that on December 17, 1996 the Judge in Part AP-2 asked why this case is being treated differently than other similar cases and the Assistant District Attorney responded: "The writing on his body, your Honor, especially in reference to the Mayor.” The defendant argues that because the expression of political views is constitutionally protected, the District Attorney’s handling of this case is discriminatory and violates the defendant’s constitutional rights.
The Fourteenth Amendment prohibits the State from enforcing even a valid law "with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances”. (Yick Wo v Hopkins, 118 US 356, 373-374.) In Yick Wo v Hopkins (supra), the Supreme Court held that purposeful discrimination in the administration of an otherwise nondiscriminatory law violates equal protection. This principle has since been applied in a number of cases: United States v Falk (479 F2d 616 [refusing induction into the Armed Forces]); United States v Steele (461 F2d 1148 [refusal to answer census questions]); People v Utica Daw’s Drug Co. (16 AD2d 12 [4th Dept 1962] [village ordinance banning commercial signs greater than a certain size]).
To establish discriminatory enforcement, it must be shown at the outset that there is a conscious and intentional discrimination in prosecuting for a crime in a community where there is "general disregard of a particular law” (People v Utica Daw’s Drug Co., 16 AD2d 12, 17, supra) and it must be further established that (1) a similar crime was committed and *64 that the prosecution had legally sufficient evidence connecting someone with the commission of that crime; (2) the prosecution singled out defendant because of "personal animosity, nonconformity, unpopularity, or some other illegitimate reason offensive to our notions of fair play and equal treatment under the law”, and (3) the prosecutorial determination to single out defendant was part of a pattern of discrimination intentionally practiced against him. (People v Goodman, 31 NY2d 262, 269 [1972].) In the current case, these criteria have not been met.
Where the decision to prosecute is predicated on the defendant’s conduct, and not on any improper or discriminatory consideration, a claim of discriminatory or selective enforcement fails. (See, People v Carter, 86 AD2d 451, 454 [2d Dept 1982].) And differences in treatment of criminal offenders have been considered not to affect an interest of fundamental concern. (Marshall v United States, 414 US 417; McGinnis v Royster, 410 US 263; United States ex rel. McGill v Schubin, 475 F2d 1257.) The "mere unequal application of a statute fair on its face does not of itself violate equal protection and * * * only purposeful or intentional discrimination is prohibited” (People v Acme Mkts., 37 NY2d 326, 330 [1975], citing Snowden v Hughes, 321 US 1, 8). Thus, where a defendant claimed that the indictment against him should have been dismissed because the charges against one of his codefendants were reduced to a misdemeanor and later adjourned in contemplation of dismissal, this did not provide cause to dismiss. (People v Rodriguez, 192 AD2d 683 [2d Dept 1993].)
It appears that the defendant in the current case is being offered an ungenerous plea because of the writing on his body. However, it is precisely this writing that distinguishes this case from the unexceptional run-onto-the-field case. The allegations that the defendant had provocative announcements composed on his torso show that he had a different intent and a less spontaneous mental state. It shows preparation and premeditation. Furthermore, the message about the Mayor was vulgar and was very inappropriate for children, many of whom surely witnessed the episode. It does not seem unfair that this message-ridden spectacle should be treated less generously than the typical run-onto-the-field case. A very reasonable conclusion could be made that, unlike the fan so taken with the vitality of the moment, both the existence and content of the message showed a thoughtful and planned course to violate the law.
The District Attorney is generally given wide latitude "in determining when and in what manner to prosecute a sus *65 pected offender”. (People v Di Falco, 44 NY2d 482, 486 [1978]; see also, People v Zimmer, 51 NY2d 390, 394 [1980].) "[I]t is incumbent upon the court to pay homage to the prosecutorial prerogative.” "The District Attorney has almost unfettered discretion in determining how and when to prosecute, including the right to reduce, add or amend charges.” (People v Williams, 120 Misc 2d 68, 78 [Crim Ct, Bronx County 1983].)
The People obviously feel that the defendant’s actions were not similarly situated with the common run-on-the-field case. Furthermore, the defendant has not set forth any facts from which it could be concluded that his prosecution was prompted by bias, animosity or other legal infirmity. (See, People v Sharpton, 146 Misc 2d 684 [App Term, 2d Dept 1990].) Nor has it been shown that the defendant is being prosecuted because of his political views, or that if the defendant had an inscription complimentary to the Mayor, or merely commercial in nature, the District Attorney would have offered a more generous plea. The defendant’s motion to dismiss on the ground of discriminatory prosecution is therefore denied.
Next, the defense moves for dismissal in the interest of justice. A court may grant a dismissal in the furtherance of justice, even when there is no other legal basis requiring a dismissal, when there exists "some compelling factor, consideration or circumstance clearly demonstrating that conviction or prosecution of the defendant upon such accusatory instrument or count would constitute or result in injustice.” (CPL 170.40 [1].) Dismissal lies within the discretion of the Trial Judge but such discretion is neither absolute nor uncontrolled. (People v Wingard, 33 NY2d 192 [1973]; People v Benevento, 59 AD2d 1029 [4th Dept 1977].)
CPL 170.40 (1) provides 10 criteria that a court must examine and weigh collectively and individually, to the extent appropriate, in deciding whether to exercise its discretionary power to dismiss:
"(a) the seriousness and circumstances of the offense;
"(b) the extent of harm caused by the offense;
"(c) the evidence of guilt, whether admissible or inadmissible at trial;
"(d) the history, character and condition of the defendant;
"(e) any exceptionally serious misconduct of law enforcement personnel in the investigation, arrest and prosecution of the defendant;
"(f) the purpose and effect of imposing upon the defendant a sentence authorized for the offense;
*66 "(g) the impact of a dismissal on the safety or welfare of the community;
"(h) the impact of a dismissal upon the confidence of the public in the criminal justice system;
"(i) where the court deems it appropriate, the attitude of the complainant or victim, with respect to the motion;
"(j) any other relevant fact indicating that a judgment of conviction would serve no useful purpose.”
When viewing these criteria, the court must look to compelling factors that warrant dismissal. A compelling factor is present if denial of the motion would be such an abuse of discretion so as to shock the conscience. (See, People v Stern, 83 Misc 2d 935 [Crim Ct, NY County 1975].)
This court has examined and considered, individually and collectively, all of the criteria enumerated in GPL 170.40 (1) and finds that there are not sufficient compelling factors warranting dismissal. Indeed, the defendant’s alleged actions clearly warrant prosecution. To begin with, security guards and police charged with restraining and removing those entering unlawfully onto the ball field risk physical injury. Furthermore, the defendant interrupted more than 56,000 fans attending the game and perhaps millions of people worldwide. Finally, the defendant created a vulgar spectacle that was inappropriate, especially for children. (There were surely many and maybe thousands of children at this game who did not turn their eyes from the field like the television cameras.)
It has been often said that "In the great department store of life, baseball is in the toy department.” And baseball is a game for kids of all generations: When at a ball park, we may all go back to a childhood dream. For the children at the sixth game of the 1996 World Series, the message on the defendant’s torso may have diminished the innocence of the game and detracted from the purity of the enchantment.
Accordingly, the motion to dismiss on the ground that the prosecution is discriminatory is denied and the motion to dismiss in the interest of justice is also denied.