OPINION OF THE COURT
Marjorie L. Byrnes, J.
Defendant was arrested on August 9, 2000, in the City of Rochester, and charged with aggravated unlicenced operation of a motor vehicle in the third degree (hereinafter AUOSrd), in violation of Vehicle and Traffic Law § 511 (1) (a). Defendant was thereafter arraigned on August 31, 2000. The accusatory instrument filed with the court consisted of a uniform traffic ticket supplemented by a supporting deposition and a New York State Department of Motor Vehicles (hereinafter DMV) teletype, which was incorporated into the supporting deposition by reference. The supporting deposition, signed by Rochester Police Officer E. Martinez, specifically stated defendant “told your complainant that she didn’t have a NY State license because it had been suspended due to a DWI arrest.” The DMV teletype listed a license revocation on December 27, 1997 for a DWI conviction.
The accusatory instrument charging AUOSrd was facially sufficient. The pleadings established reasonable cause to believe that defendant operated a motor vehicle on a public highway while knowing or having reason to know that her license or privilege of operating a motor vehicle in this State was suspended (see, People v Quarles, 168 Misc 2d 638; Vehicle and Traffic Law § 511 [1] [a]; CPL 100.40 [2]).
The element of operation was established by the officer’s personal observations. The element of “while knowing or hav *752 ing reason to know” that her license was suspended was established through defendant’s admissions, which were included in the supporting deposition. While such admissions constitute hearsay, they must be considered by the court in determining the facial sufficiency of the accusatory instrument. When an accusatory instrument consists of a uniform traffic ticket supplemented by a supporting deposition, factual allegations may be based either upon personal knowledge or information and belief (see, People v Quarles, supra, at 641; CPL 100.40 [2]; 100.25). Even if the court were to analyze the facial sufficiency of the accusatory instrument using the standard set forth in CPL 100.40 (1), the factual allegations would still be sufficient to support the charge. Factual allegations which would be admissible under some hearsay rule exception must be considered by the court (see, People v Casey, 95 NY2d 354 [2000]). Therefore, defendant’s admission that her licence was suspended established an essential element of the charge of AUO3rd.
The factual allegations would also have supported the charge of aggravated unlicensed operation of a motor vehicle in the second degree (hereinafter AU02nd), in violation of Vehicle and Traffic Law § 511 (2) (a) (ii). The factual allegations established reasonable cause to believe that defendant operated a motor vehicle on a public highway while knowing or having reason to know that her license or privilege of operating a motor vehicle in this State was suspended and that the suspension or revocation was based upon “a conviction for a violation of any of the provisions of section eleven hundred ninety-two of this chapter” (Vehicle and Traffic Law § 511 [2] [a] [ii]). The DMV teletype attached to and incorporated into the supporting deposition established the additional element of a conviction for a violation of Vehicle and Traffic Law § 1192.
The prosecutor assigned to this case, William Gargan, Esq., was aware that defendant could have been charged with the higher level offense. Indeed, he had previously prosecuted defendant for DWI in a town court and he was in possession of the DMV teletype attached to this accusatory instrument. However, rather than moving to amend the accusatory instrument to charge AU02nd, he used the possibility of upgrading the charge as a strategic maneuver to secure a guilty plea from defendant to AUOSrd.
On October 23, 2000, at a pretrial conference, Mr. Gargan stated that he would consent to a plea agreement whereby defendant would plead guilty to AUOSrd, although he believed *753 she should have been charged with AU02nd. Mr. Gargan informed defense counsel that if a guilty plea were not entered to the charge of AUOSrd, he would seek to amend or upgrade the charge to AU02nd. Defense counsel, on that date Judith Sinclair, Esq., of counsel to Thomas D. Cook, Esq., stated that she did not have authority to allow defendant to enter a guilty plea to AUOSrd and she requested that the matter be scheduled for a nonjury trial. A nonjury trial was scheduled for November 22, 2000, at 3:30 p.m. It was a date certain for trial and no other cases were scheduled. Mr. Gargan was clearly aware of the date certain.
On November 22, 2000, the court called the case for trial as scheduled. The People were still represented by Mr. Gargan; defendant was represented by Daniel Fulmer, Esq., of counsel to Thomas D. Cook, Esq. The defense stated it was ready for trial. Mr. Gargan stated that unless defendant pleaded guilty to AUOSrd, that charge would be withdrawn and the People would subsequently refile an accusatory instrument charging defendant with AU02nd. Mr. Gargan also stated that, although he clearly knew the case was scheduled for trial, he elected not to subpoena any witnesses.
Mr. Gargan elected not to subpoena any witnesses to a date certain for trial because he anticipated that: (1) defendant would plead guilty to AUOSrd to avoid risking a conviction for AU02nd, and (2) if the People moved to amend the charge to AU02nd, the defense would request an adjournment pursuant to CPL 100.45 (3), which the court would necessarily grant. Unfortunately, Mr. Gargan anticipated incorrectly and his assessment of the case backfired. Defendant did not plead guilty to AUOSrd and wanted to proceed to trial. Further, Mr. Fulmer stated that he was previously aware that the charge may be upgraded, that he was prepared for that contingency and that his client did not oppose an amendment of the charge to AU02nd. Additionally, Mr. Fulmer reiterated that defendant was prepared for trial on either the charge of AUOSrd or an amended charge of AU02nd and would not request an adjournment.
The court stated that the factual allegations contained in the accusatory instrument were legally sufficient to support the charge of AU02nd and it repeatedly offered to amend the accusatory instrument, if the People so moved, to charge AU02nd pursuant to CPL 100.45 (3).
Mr. Gargan, however, repeatedly insisted that he was not moving to amend the charge and that he did not want the *754 court to amend the charge to AU02nd, even though that was the charge he wanted to prosecute and felt was justified by the facts. He then purported to “withdraw” the accusatory instrument charging AUOSrd and insisted that he would refile another accusatory instrument charging defendant with AU02nd.
The court refused to allow the People to withdraw the AUOSrd charge and the court stood ready, willing and able to amend the accusatory instrument to AU02nd, the charge that the People wanted to prosecute. Additionally, the court pressed the People regarding the amendment of the accusatory instrument and readiness for trial but Mr. Gargan refused to answer the court’s queries. It was his opinion that the charge of AUOSrd was withdrawn and removed from the Trial Calendar.
At this point, defendant moved to dismiss the charge of AUOSrd for failure to prosecute. The court sua sponte dismissed the charge of AUOSrd in the interest of justice. In support of the dismissal in the interest of justice, the court noted that the charge involved was AUOSrd (the lowest level of misdemeanor authorized by law), that the case had a date certain for trial of which the People were aware for a month, that the People elected not to subpoena any witnesses for the trial, that the People refused to move to amend the accusatory instrument to the charge that the People wanted to prosecute all along, that the People refused to proceed to trial on either the original charge or the upgraded charge, and that the People attempted to withdraw the charge, rather than proceed to trial, which effectively avoided a trial order of dismissal.*
Mr. Gargan stated that the court had no authority to dismiss the charge in the interest of justice inasmuch as the People had already withdrawn the charge. He further stated his intention to refile the matter as an AU02nd.
Prosecutor’s Authority to Withdraw
The prosecutor in this case asserts that he had the power to withdraw the accusatory instrument charging AUOSrd after it was filed with the court, notwithstanding the fact that it was facially sufficient (CPL 100.40 [2]). The prosecutor opined that he possessed inherent power to determine whether the charge was to be prosecuted and in what fashion. To that end, he as *755 serted that he possessed the power and authority to withdraw a criminal action on the date of trial and then refile another accusatory instrument at a subsequent time.
County Law § 700 sets forth the powers and duties of the District Attorney. Pursuant to subdivision (1) of that section, “it shall be the duty of every district attorney to conduct all prosecutions for crimes and offenses cognizable by the courts of the county for which he or she shall have been elected.” A prosecutor has “broad discretion in determining when and in what manner to prosecute a suspected offender” (People v Di Falco, 44 NY2d 482, 486). “[A]lmost invariably it is the prosecutor who decides whether a case is to be pressed or dropped and what the nature of the specific offense or offenses to be lodged against a defendant is to be” (People v Zimmer, 51 NY2d 390, 394; see also, Matter of Bytner v Greenberg, 214 AD2d 931). While it is incumbent on a court to pay homage to prosecutorial prerogative, the prosecutor’s discretion is not unbridled or absolute (see, People v Wilkins, 68 NY2d 269; Matter of Cloke v Pulver, 243 AD2d 185, 188; People v O’Grady, 175 Misc 2d 61, 64-65; People v Williams, 120 Misc 2d 68, 78-79).
The Criminal Procedure Law is the “exclusive governing body of law” for all criminal actions and proceedings (Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 1.10, at 10). The provisions of the CPL apply to all criminal actions and proceedings (CPL 1.10 [1] [a]). Where, however, a CPL provision conflicts with the Federal or State Constitution, the latter will govern (Preiser, op. cit.).
The provisions of the CPL provide a prosecutor with wide latitude in local criminal courts and are not inconsistent with the authority vested a prosecutor in County Law § 700. For example, a prosecutor has the authority to determine whether charges are to be brought against an individual and, if so, what offenses will be lodged. Additionally, prior to charges being filed with a local criminal court, a prosecutor may elect not to prosecute an accused and withdraw criminal charges; in such a case, the action is deemed terminated in favor of the accused and the records are sealed (CPL 160.50 [3] [i]). Furthermore, once charges are filed with the court, a prosecutor has the power to move to amend, reduce, consolidate, sever, supersede or dismiss the charges (CPL arts 100, 170). This court has found no CPL provision (and the prosecutor cited to none), however, that authorizes or gives a prosecutor the option to withdraw the charge as the prosecutor attempted to do in this case.
*756 Therefore, the court concludes that the prosecutor did not have authority to “withdraw” the accusatory instrument charging AUOSrd and his purported attempt to do so was ineffective.
Interest of Justice Dismissal
The court informed the People that they did not have authority to withdraw the accusatory instrument. As noted, the court then repeatedly attempted to press the prosecutor regarding amendment of the accusatory instrument to reflect the charge the People wanted to prosecute and readiness for trial. The prosecutor, however, refused to answer the court’s questions and insisted that the charge was already withdrawn, so there was no case pending before the court. The defense stated that defendant was ready for trial.
At this point, the court sua sponte dismissed the charge of AUOSrd in the interest of justice. CPL 170.40 (2) authorizes a local criminal court to dismiss an accusatory instrument in the interest of justice either upon motion of the People, the defendant or the court itself (see, CPL 170.40 [2]; see also, People v Henriquez, 68 NY2d 679). The court took this action, however, only after the following occurred: (1) the prosecutor admitted that, even though the case was scheduled for trial with a date certain more than a month in advance, he intentionally did not subpoena any witnesses for trial; (2) the prosecutor attempted the unauthorized withdrawal of the charge of AUOSrd on the day of trial which, if successful, would have allowed the People to avoid a trial order of dismissal; (3) the prosecutor repeatedly refused to move to amend the accusatory instrument to charge AU02nd, the charge that the People wanted to prosecute; and (4) the prosecutor refused to proceed to trial on either the original charge or the upgraded charge.
In support of the court’s dismissal in the interest of justice, the court noted on the record in open court that the charge was an allegation of AUOSrd (the lowest level of misdemeanor authorized by law) and the other enumerated factors outlined previously.
CPL 170.40 (1) sets forth 10 factors that the court must consider, to the extent applicable, in deciding whether to dismiss in the interest of justice. The factors are to be considered “individually and collectively” (CPL 170.40 [1]). The statute gives a local criminal court authority to dismiss a charge in the interest of justice for some compelling factor, consideration or circumstance demonstrating that conviction or *757 prosecution would constitute or result in an injustice (CPL 170.40 [1]). Such power should be used sparingly and only in rare and unusual cases when it cries out for fundamental justice beyond the confines of conventional considerations (see, People v Belge, 41 NY2d 60).
In this case, the court did not delineate all of the 10 factors specified in the statute when it set forth its decision in open court on the record, but it did generally set forth the basis for its decision. Pursuant to the requirement that the court “set forth its reasons therefor” (CPL 170.40 [2]) and enter an appealable order (see, Matter of Holtzman v Goldman, 71 NY2d 564, 575), the court will delineate the 10 statutory factors herein.
The first relevant and applicable factor for consideration herein is the seriousness and circumstances of the offense (CPL 170.40 [1] [a]). Here, the charge is AUO3rd, which is the lowest misdemeanor authorized by law, punishable by a term of imprisonment of not more than 30 days. Until 1993, AUO3rd was not even classified as a crime. No motor vehicle accident was involved and no one was harmed or injured. The second factor for consideration is the extent of harm caused by the offense (CPL 170.40 [1] [b]). Here, although defendant was operating a vehicle without a valid license, as previously noted, there was no motor vehicle accident and no one was harmed or injured as a result of defendant’s conduct.
The third factor for consideration is “the evidence of guilt, whether admissible or inadmissible” (CPL 170.40 [1] [c]). Here, although it appears that the evidence of guilt may have been strong, the People had no witnesses on a date certain for trial; therefore, the People could not have established defendant’s guilt at trial and the charge would have been dismissed. The fourth factor for the court to consider is the history, character and condition of defendant (CPL 170.40 [1] [d]). Defendant has a prior conviction for DWI. The fifth factor for consideration is whether there was any exceptionally serious misconduct of law enforcement personnel in the prosecution of the defendant and the court notes that there was none (CPL 170.40 [1] [e]).
The sixth statutory factor is the purpose and effect of imposing a sentence authorized by law (CPL 170.40 [1] [f]). The court notes that the Rochester City Court handles literally thousands of AUO3rd and AUO2nd charges every year. Rarely is anyone who is convicted of either offense given a sentence other than a conditional discharge. The seventh factor to be considered is the impact of a dismissal on the safety or welfare of the com *758 munity (CPL 170.40 [1] [g]). There has been no showing that there would be any impact.
The eighth statutory factor is the impact of a dismissal upon the confidence of the public in the criminal justice system (CPL 170.40 [1] [h]). There would be no negative impact whatsoever. Indeed, the public is served by knowing that cases proceed through the system in an orderly and timely fashion without unnecessary court dates or adjournments and without manipulation of the criminal justice system by any party, even if the party is acting in good faith. The ninth factor for consideration is the attitude of the complainant or victim (CPL 170.40 [1] [i]). Here, there is no victim. The final factor for the court to consider is “any other relevant fact indicating that a judgment of conviction would serve no useful purpose” (CPL 170.40 [1] |j]). In this case, the People were afforded an opportunity to prosecute the defendant. A date certain for trial was scheduled that gave one-month advance notice. On the day of trial, the prosecutor intentionally made a decision or gamble to subpoena no witnesses for trial; when this decision “backfired,” he attempted to withdraw the charge of AUOSrd so he could refile an accusatory instrument charging AU02nd. A withdrawal, if allowed by the court, would effectively enable the People to avoid a certain trial order of dismissal. It would also allow prosecutorial ploys to manipulate the court’s schedule, to waste the time of the court and court personnel, and to obstruct the orderly and timely disposition of criminal cases. Additionally, although the prosecutor stated his intent to proceed on an upgraded charge and the court was willing to allow him to do so, he refused to move to amend to the upgraded charge, even though the factual allegations in the accusatory instrument supported the amendment. In sum and substance, the People refused to prosecute the case and were not ready for trial, yet tried to avoid a trial order of dismissal.
It should be noted that had the case proceeded to trial as scheduled, the case would have been dismissed pursuant to a trial order of dismissal, inasmuch as the People had no witnesses.
A similar situation arose in Matter of Holtzman v Goldman (71 NY2d 564, supra). There, on the day of trial, the prosecutor was unable to locate the complaining witness and requested an adjournment of the trial. The court denied the request and ordered the People to start trial immediately. Because the People had no witnesses, they could not proceed to trial. Consequently, the trial court dismissed the indictment on the *759 merits pursuant to CPL 290.10, the statutory vehicle authorizing a trial order of dismissal. The People subsequently commenced a CPLR article 78 proceeding seeking to prohibit enforcement of the trial court’s order. On appeal to the Court of Appeals, that court stated that the trial court was justified in denying the prosecutor’s request for an adjournment of the trial (Matter of Holtzman v Goldman, supra, at 570; accord, Matter of Hynes v George, 76 NY2d 500). The Court of Appeals ruled, however, that the trial court’s subsequent corrective action was improper and it reinstated the indictment because the trial court had no authority to dismiss the indictment on the merits inasmuch as the trial had not commenced (Matter of Holtzman v Goldman, supra, at 570-571). Although the Court of Appeals reinstated the indictment due to the basis of the trial court’s dismissal, the Court of Appeals also stated “[t]his court in no way denies or curtails even the extreme measure of dismissal of a criminal prosecution to redress the People’s abuse of adjournments. Dismissal in the interest of justice may well be appropriate for just such abuses” (Matter of Holtzman v Goldman, supra, at 575).
Like the situation in Matter of Holtzman (supra), this case did not proceed to trial on the trial date due to the People’s lack of readiness for trial. In Matter of Holtzman, the prosecutor was unable to locate the complaining witness; in this case, the prosecutor intentionally did not subpoena any witnesses for trial. In Matter of Holtzman, the prosecutor requested an adjournment that was denied; in this case, the prosecutor attempted to withdraw the charge and refused to proceed to trial. No adjournment was requested by the People, although it would have been denied. In both cases, had the People proceeded to trial, the cases would have resulted in dismissals. Unlike the trial court in Matter of Holtzman, which improperly dismissed the indictment on unauthorized grounds, this court has dismissed the charge on authorized grounds, i.e., in the interest of justice, and for valid reasons (see, Matter of Holtzman v Goldman, supra, at 574-575).
Therefore, this court reaffirms its oral decision dismissing the accusatory instrument in the interest of justice as it is justified under the exceptional circumstances set forth by the court both in this decision and on the record in open court on November 23, 2000.
The accusatory instrument is therefore dismissed in the interest of justice.

 It should be noted that the People did not request an adjournment of the trial. However, even if the People had made such a request it would have been denied. The People not being ready for trial due to the People’s intentional failure to subpoena witnesses is not grounds for an adjournment of the trial.